UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RHONDA E. POINDEXTER-BROADNAX,         )<br>                                                                              )<br>            Plaintiff,                                       )<br>                                                                              )<br>    vs.                                                               )<br>                                                                              )<br>MICHAEL J. ASTRUE, Commissioner of  )<br>the Social Security Administration,              )<br>                                                                              )<br>            Defendant.                                  )<br>                                                                              ) | Cause No. 1:09-cv-719-WTL-DML |

**ENTRY ON JUDICIAL REVIEW**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Rhonda E. Poindexter-Broadnax seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court rules as follows.

**PROCEDURAL HISTORY**

Poindexter-Broadnax filed her application in December 2005 alleging disability beginning on October 26, 2005, due to insulin dependent diabetes mellitus with peripheral neuropathy, obesity, cataracts, anxiety, and depression. Poindexter-Broadnax's application was denied initially on March 31, 2006. Upon reconsideration, her application was denied again on June 5, 2006. Poindexter-Broadnax timely requested a hearing before an administrative law judge ("ALJ"). That hearing, at which Poindexter-Broadnax was represented by counsel, was held before ALJ Albert Velasquez on July 8, 2008. Poindexter-Broadnax and vocational expert Ray Burger both testified at the hearing. In his October 31, 2008, decision, the ALJ denied

Poindexter-Broadnax's application for benefits. After the Appeals Council denied review of the ALJ's decision on May 7, 2009, Poindexter-Broadnax filed this timely appeal.

## POINDEXTER-BROADNAX'S MEDICAL HISTORY

Poindexter-Broadnax was 41 years old when she filed her application for benefits. She is a high school graduate whose relevant work experience is as an unskilled or semi-skilled worker. Until October 2005, Poindexter-Broadnax worked as a receptionist in an OB/GYN clinic. After leaving that job she worked briefly for J.C. Penny, Walmart, A Darling Courier Service Inc., and Club Demonstration Services Inc.

Given the nature of Poindexter-Broadnax's arguments and the Court's resolution of them, only a general discussion of the medical evidence in the record is necessary. Poindexter-Broadnax was diagnosed with Type II diabetes mellitus in the 1990s. Her diabetes is generally poorly controlled and her blood sugars are often between 200 and 300.[1] Poindexter-Broadnax's diabetes has resulted in peripheral neuropathy. Specifically, she experiences pain and numbness in her feet, legs, fingers, hands, and arms. Her neuropathy causes her to drop things and occasionally to fall.

In addition to her diabetes, Poindexter-Broadnax is obese. She also has reported vision problems, which may be related to her diabetes. Additional evidence of record is discussed as relevant below.

## APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to

---

[1] A normal blood sugar is around 100.

result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this court may not reweigh the evidence or substitute its judgment for that

of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Id.*

## DISCUSSION

The ALJ found at step one that although Poindexter-Broadnax worked intermittently after her onset date of October 26, 2005, she did not engage in substantial gainful activity within twelve months of this date. At steps two and three the ALJ concluded that Poindexter-Broadnax had the severe impairments of insulin dependent diabetes mellitus, peripheral neuropathy, and obesity, but these impairments, singly or in combination, did not meet or medically equal a listed impairment. After step three but before step four, the ALJ determined that Poindexter-Broadnax had the residual functional capacity ("RFC") to:

> [L]ift and carry twenty pounds occasionally and ten pounds frequently. She can stand and walk six hours of an eight hour workday and sit six hours provided the work permits her to sit or stand at her option for one to two minutes each hour. The claimant cannot crawl or kneel, and cannot climb ladders, ropes or scaffolds. She can occasionally climb ramps and stairs. The claimant cannot work at unprotected heights, around dangerous moving machinery, around large bodies of water, or around open flames. The claimant cannot perform work that requires she operate a motor vehicle.

Record at 15.

Based on the RFC, at step four, the ALJ concluded that Poindexter-Broadnax was capable of performing her past relevant work (i.e. working as a laborer, greeter, or receptionist),

and thus, was not disabled. In the alternative, even assuming that Poindexter-Broadnax was unable to perform her past relevant work, the ALJ concluded at step five, that jobs existed in the national economy for individuals with the Claimant's age, education, work experience, and RFC. Therefore, the ALJ found that Poindexter-Broadnax was not disabled.

Poindexter-Broadnax advances several objections to the ALJ's decision, each of which are addressed below.

### *Listing 9.08A*

Poindexter-Broadnax claims that the ALJ acted "without a medical advisor and without citing any supporting evidence" when he determined "that her diabetes and neuropathy did not meet or medically equal the requirements of Listing 9.08A." Docket No. 17 at 12-13. Poindexter-Broadnax alleges that the ALJ's determination that she "did not medically equal Listing 9.08A must be reversed because whether an impairment medically equals a listed impairment must be based on medical findings regarding equivalency." *Id*. at 14. She then cites *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004), in which the Seventh Circuit reversed an ALJ who relied on his own lay opinion and concluded that a claimant did not meet or medically equal a listing. However, *Barnett* is not analogous to the instant case. Unlike the ALJ in *Barnett* who never consulted a medical expert regarding whether the listing was met, in the instant case, the ALJ relied upon the opinion of Drs. Safadi, Rau, Ruiz, and Kladder in concluding that Poindexter-Broadnax did not meet or medically equal Listing 9.08A.

In addition, the Claimant failed to present any evidence indicating that she meets Listing 9.08A for diabetes mellitus with "[n]europathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross

and dexterous movements, or gait and station (see 11.00C)." 20 C.F.R. Part 404, Subpart P, App. 1, § 9.08A. Listing 11.00C is for

> Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combination . . . . The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

*Id*. § 11.00C.

The evidence in the record reveals that, although the Claimant may have a mild neuropathy, it is neither significant nor persistent such that it would satisfy Listing 9.08A. Poindexter-Broadnax cites Dr. Safadi's February 2006 examination as evidence that she meets or equal Listing 9.08A. In this report, Dr. Safadi notes that Poindexter-Broadnax's "[g]ait and station are normal without the use of an assistive devise. She was able to walk on heels and toes with minimal difficulty due to her diabetic neuropathy." Record at 196. Poindexter-Broadnax's neurological exam was also normal, equal, and symmetric and Dr. Safadi reported that Poindexter-Broadnax was "able to pick up coins, rotate doorknobs, button, unbutton, zip and unzip clothing bilaterally without difficulty." *Id*. at 197. Thus, nothing in Dr. Safadi's opinion supports a finding of significant and persistent disorganization of motor function or sustained disturbance of gross and dexterous movements, or gait and station as required by Listing 9.08A.

The Claimant also cites Dr. Rau's June 2006 neurological evaluation as evidence that she meets Listing 9.08A. Dr. Rau's report states that Poindexter-Broadnax's "[m]otor examination shows normal muscle bulk, tine, and strength." *Id*. at 53. Although her sensory examination revealed that she has diminished sensation to "light touch and pinprick," which is more severe distally in the glove and stocking areas, her "gait and station was intact." *Id*. Thus, Dr. Rau

6

concluded that Poindexter-Broadnax had "diffuse paresthesias involving both her lower extremities" with "[p]ossible generalized sensorimotor peripheral neuropathy." *Id*. Dr. Rau recommended additional testing, which revealed "a possible sensory neuropathy." *Id.* at 64. However, in addition to noting only a *possible* sensory neuropathy, Dr. Rau's opinion by no means states that Poindexter-Broadnax is suffering from a significant and persistent disorganization of motor function or a sustained disturbance of gross and dexterous movements. Nor is there anything in the record supporting a finding that her gait or station is disorganized or disturbed. Accordingly, Dr. Rau's opinion does not support the conclusion that Poindexter-Broadnax satisfies Listing 9.08A.

Finally, Poindexter-Broadnax cites treating physician Dr. Wyan'ts report as evidence that she meets Listing 9.08A. Dr. Wyant has apparently served as Poindexter-Broadnax's primary care physician since at least 2003. In 2008, he noted that "[s]he does complain of some numbness of her feet" but has "no pain at this time." *Id*. at 48. Also in 2008, he conducted a physical capacities evaluation on Poindexter-Broadnax. In this evaluation, Dr. Wyant opined that the Claimant could sit or stand for two hours at a time and could walk for one hour at a time during the course of an eight hour workday. *Id.* at 51. He also noted that Poindexter-Broadnax could not use her hands for fine manipulation. While this implies that Poindexter-Broadnax may suffer from a neuropathy, it does nothing to support Poindexter-Broadnax's desired conclusion – that she meets or medically equals Listing 9.08A. The evidence presented simply does not demonstrate that the Claimant has a significant and persistent disorganization of motor function or sustained disturbance of gross and dexterous movements. Nor does the evidence show a disturbance of Poindexter-Broadnax's gait or station as required by the Listing.

Further, the totality of the record contains opinions from multiple medical experts indicating that the Claimant's impairment does not meet or medically equal Listing 9.08A. *See, e.g.*, Record at 74 (report from Dr. Ruiz); *id.* at 75 (report from Dr. Corcoran). Because the ALJ's determination that Poindexter-Broadnax does not meet or medically equal Listing 9.08A is supported by substantial evidence the Court will not disturb this ruling.

### *Credibility Determination*

Poindexter-Broadnax's second issue with the ALJ's ruling is with respect to the ALJ's adverse credibility determination. In his decision the ALJ stated:

> The claimant has been prescribed appropriate medications for her impairments. There is evidence that the claimant has not been entirely compliant in taking the prescribed medications, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application . . . . As mentioned earlier, the record reflects work activity after the alleged onset date. Although that work activity does not appear to constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than she has generally reported.

Record at 16-17. Further, the ALJ found that "the claimant's allegations concerning her impairments and their impact on her ability to work are not fully credible." *Id*. at 17-18.

Because the ALJ evaluates credibility by questioning and observing a live witness, not simply a cold record, the ALJ's credibility determination is reviewed deferentially and should be overturned only if it is "patently wrong." *See Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). However, "[t]he determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Id.* (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)).

The reasons for an ALJ's credibility determination must be grounded in the

> evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003) (quoting SSR 96-7p).

In the instant case the Claimant argues that the ALJ's determination "must be reversed because it is contrary to Social Security Ruling 96-7p." Docket No. 17 at 16. Although Poindexter-Broadnax acknowledges that "[t]he ALJ mentioned SSR 96-7p," he allegedly "failed to make any findings concerning the seven factors the Ruling requires the ALJ to consider." *Id.* However, the Plaintiff does not identify which of these factors the ALJ failed to consider. Further, the Court's own review of the ALJ's decision indicates that the ALJ did consider non-medical evidence such as the Plaintiff's daily activities when assessing her credibility. He also noted her limited work activity and her consistent non-compliance with medical advice. As a whole, this evidence indicates that Poindexter-Broadnax was more functional than she generally alleged. Based on the evidence in the record the Court cannot find the ALJ's credibility determination to be patently wrong.

### *Residual Functional Capacity ("RFC")*

The Claimant's final issue with the ALJ's decision is that the RFC "omits all of the quite severe limitations due to the claimant's diabetes mellitus and peripheral neuropathy." Docket No. 17 at 17. Poindexter-Broadnax also claims that "[t]he ALJ cited no evidence to support his assessment. Moreover, his unsupported assessment is directly contrary to the quite detailed assessment by Dr. Wyant MD who had treated her for many years." *Id.* Thus, the Claimant

argues that because the ALJ allegedly failed to consider all of her documented impairments, his decision must be reversed.

The Court disagrees. In determining the Claimant's RFC, the ALJ relied on testimony from Dr. Rau, Dr. Wyant, and Dr. Safadi. Ultimately, the ALJ concluded that the "significant limitations" suggested by Dr. Wyant were not necessary. Record at 17. Although Dr. Wyant was Poindexter-Broadnax's treating physician, his opinion is not automatically entitled to controlling weight. Instead, the Seventh Circuit instructs an ALJ "to give controlling weight to the medical opinion of a treating physician if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence.'" *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006)). If the evidence supports a treating physician's medical opinion and contradictory evidence does not exist, the ALJ lacks a basis to reject it. *Id.* But if conflicting evidence exists, the treating physician's opinion does not receive controlling weight. *Id.* Rather, the treating physician's opinion is merely additional evidence for the ALJ to consider using a variety of factors, including the length of time and how often the treating physician examined the claimant. *Id.*

In the instant case, the ALJ noted that Dr. Wyant's opinion as to Poindexter-Broadnax's limitations was "not consistent with or supported by the findings of Dr. Rau, the neurologist who examined the claimant." Record at 17. Based on this conflicting evidence, Dr. Wyant's opinion was properly treated only as "additional evidence," which the ALJ considered. Having considered the opinions of Dr. Wyant, Dr. Rau, and Dr. Safadi, the ALJ arrived at Poindexter-Broadnax's RFC. Based on the evidence in the record, the Court is unable to conclude that the ALJ's decision regarding Poindexter-Broadnax's RFC is not supported by substantial evidence. Accordingly, the

Court will not disturb the ALJ's decision.

## **CONCLUSION**

For the reasons discussed at length above, this case is **AFFIRMED**.

SO ORDERED: 08/02/2010

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Thomas E. Kieper
United States Attorney's Office
tom.kieper@usdoj.gov

Patrick Harold Mulvany
mulvany@onet.net